UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

JOHN REGA,

                                        Plaintiff,          **COMPLAINT**

                    -against-

NEW YORK PROTON CENTER, JOHN PETRIELLO,          Jury Trial Demanded
MARIA UGARTE, JONATHAN WEINBACH,

                                        Defendants.

------------------------------------------------------------------------ x

## PRELIMINARY STATEMENT

1.  Plaintiff, a 62 year-old disabled man with lung cancer, who is employed as a

maintenance technician at the New York Proton Center, a cancer treatment center located in

Manhattan, brings this action against defendants alleging disability discrimination and retaliation

in violation of the Americans with Disabilities Act of 1990 ("ADA"), the Rehabilitation Act of

1973; the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq*. ("NYSHRL");

and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, *et seq.*

("NYCHRL").  Plaintiff also claims that defendants retaliated against him for taking leave under

the Family Medical Leave Act ("FMLA") of 1993 and violated New York common law.

Plaintiff seeks compensatory and punitive damages, attorney's fees and costs, and such other and

further relief as the Court deems just and proper.

## JURISDICTION & VENUE

2.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1343, as this

action asserts violations of federal anti-discrimination laws and the FMLA, and therefore raises

federal questions regarding the deprivation of plaintiff's rights.

3.   Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28

U.S.C. § 1367 to hear and decide his New York State and New York City claims, which form

part of the same case and controversy as plaintiff's federal claims under Article III of the United

States Constitution.  In connection with plaintiff's City Human Rights Law claims, a copy of this

complaint was provided to the New York City Commission on Human Rights and the

Corporation Counsel of the City of New York, as required.

4.   Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §

1391(b) and (c) because defendants are located in this District and the incident in question

occurred in this District.

## JURY TRIAL

5.   Pursuant to Fed. R. Civ. P. 38, plaintiff demands a jury trial.

## ADMINISTRATIVE REQUIREMENTS

6.   Plaintiff timely filed an administrative charge of discrimination with the Equal

Employment Opportunity Commission ("EEOC").

7.   The EEOC issued plaintiff a right to sue letter on September 14, 2022,

allowing him to bring suit within 90 days of his receipt of the letter.

## PARTIES

8.   Plaintiff is a resident of the State of New York, County of Putnam.

9.   Defendant New York Proton Center ("NYPC") is a cancer treatment center

located in Manhattan. This company may be the recipient of federal funds, which would subject

the company to the Rehabilitation Act of 1973.

10.   At all relevant times, John Petriello was plaintiff's supervisor as the Director

of Facilities Management at the NYPC, Maria Ugarte was the Human Resources Manager, and

2

Jonathan Weinbach was the Chief Executive Officer of the center.  Because these individuals are managers and supervisors, their discriminatory and other unlawful acts are imputed to the NYPC.

## STATEMENT OF FACTS

11.  Plaintiff has been employed by the NYPC as a maintenance technician in the Department of Facilities since 2019.  Plaintiff is qualified for his position and has always performed his duties and responsibilities in a satisfactory manner and had no negative workplace issues before being stricken with lung cancer.

12.  Plaintiff's lung cancer substantially impairs one or more of his major life functions but plaintiff can continue to perform his work in a satisfactory manner with or without reasonable accommodations at the present time.  Therefore, plaintiff is a qualified individual with a disability under the governing anti-discrimination laws.

13.  At all relevant times, plaintiff was also "regarded as disabled" by defendants and had a record of the impairment at issue.

14.  Defendants were aware of plaintiff's lung cancer diagnosis, prior to the filing of plaintiff's EEOC charge and the adverse employment actions at issue, through plaintiff's: (a) conversations with his supervisor, John Petriello, and NYPC Human Resources Manager, Maria Ugarte, who reported it their superiors; (b) requests for sick leave and accommodations; (c) requests for leave under the FMLA; and (d) conversations with NYPC medical personnel during the summer of 2021, with whom plaintiff has a good relationship, and who reviewed plaintiff's diagnostic tests and advised him on treatment.  Plaintiff also informed his supervisor, John Petriello, in June 2021, that he had a suspicious growth on his lung and plaintiff had taken some days off during the summer of 2021 because he had to undergo several scans.  In violation of the

Health Insurance Portability and Accountability Act ("HIPAA") and New York law, Petriello

informed his spouse about plaintiff's condition and that plaintiff was going to have surgery.

15.  Defendants subjected plaintiff to adverse employment actions and a hostile

work environment after plaintiff was diagnosed and became sick with cancer.  Plaintiff had no

negative issues at work prior to this time.

16.  On November 24, 2021, defendants disciplined plaintiff and denied him a

bonus, a bonus that plaintiff had received the prior years of his employment, for allegedly

improperly leaving 15 minutes early for a CT scan on November 22, 2021.  The CT scan was

part of  the treatment plan for plaintiff's lung cancer.  Plaintiff did not take the entire day off

although he could have under NYPC policy.  Plaintiff told his supervisor, John Petriello, who

was talking on the phone in his office, that he was leaving a little early and Petriello waved him

off.  Petriello's administrative assistant, Nia Wilson, was not at her desk so plaintiff told a co-

worker and his officemate, Ryan Dussel, that he was leaving.  The time clock/computer was

broken and a request was put in with the technology department to fix it.  Plaintiff knows there

are cameras in the area and would have been foolish to try to sneak out without being caught.

Plaintiff also told supervisor Petriello the next day the exact time he left.  Plaintiff left when he

did because he was anxious and wanted to have his test.  On the day plaintiff left, Petriello

claims he texted plaintiff to tell him that he knew that he had left early.  Petriello also obtained a

photo of plaintiff leaving the center on November 22, 2021, revealing his obsessive pursuit of the

ill plaintiff for something trivial.

17.  Despite defendants' claims to plaintiff at work, plaintiff did not improperly

leave work 15 minutes early without permission; he entered his supervisor's office to tell him

and was waved off.  Further, plaintiff informed his co-worker and reported it again to his

4

supervisor the next day.  In addition, under NYPC policy, plaintiff could have taken the entire day off as a sick day or authorized absence.

18.  It is difficult to imagine what kind of supervisors at a cancer center, and what type of cancer center, would take an adverse employment action and harass an employee, who is a cancer patient, for leaving 15 minutes early for a procedure for a life threatening disease. Plaintiff made reasonable efforts to inform his supervisor John Petriello that he was leaving a little early, which is what the NYPC requires.  Plaintiff's similarly situated co-workers come late to work and leave early, for reasons not authorized and for reasons unrelated to a disability, and no adverse employment actions were or are taken against them.  Also, Petriello comes and goes as he pleases, and this is not permissible under NYPC policy simply because Petriello is an administrator.

19.  The written discipline, dated November 24, 2021 approved by John Petriello, Maria Ugarte and, upon information and belief, CEO Jonathan Weinbach, states that plaintiff left work at 11:44 a.m., an hour and 15 minutes early, but it is undisputed that the actual time was 12:44 p.m., 15 minutes early.  This false statement raises an inference that defendants intentionally exaggerated the incident in order to perpetrate disability discrimination.

20.  Plaintiff has a history at the NYPC of arriving to work on time and working a full day without time and attendance problems.

21.  The written discipline issued to plaintiff states on page 2 that "excessive lateness and absences ... will not be tolerated."  There is nothing in the disciplinary document or in plaintiff's personnel file or history that suggests that plaintiff left early excessively or was late or absent excessively.  This was an exaggeration in order to discipline plaintiff because of his

disability.  Plaintiff was informed that CEO Weinbach approved of this discipline and denial of a

bonus, as well as other adverse employment actions taken against plaintiff.

22.  Plaintiff's 2021performance evaluation indicates plaintiff is a solid employee

and the evaluation makes very positive comments about his work performance.  Plaintiff's prior

performance evaluations were positive as well.  It does not make sense that plaintiff would be

disciplined and denied a bonus for an isolated incident, that was not plaintiff's fault, when

everything else that plaintiff did at work, in the employer's view, was positive.  As stated,

plaintiff received this bonus the prior two years of his employment.  This raises an inference that

everything changed when plaintiff became ill and raises an inference of disability discrimination.

23.  On or about December 29, 2021, plaintiff initiated a request for FMLA leave

for cancer surgery.  On January 3, 2022, plaintiff was approved for FMLA leave for the period

from January 12, 2022 through February 23, 2022, which period was subsequently amended by

to end on February 20, 2022.  Plaintiff was out on FMLA leave from January 12, 2022 to

February 20, 2022, and returned to work on February 21, 2022.

24.  In addition to the discipline and denial of a bonus, plaintiff has been

subjected to other adverse employment actions and a hostile work environment on the basis of

his disability, his record of impairment, and what defendants regard as a disability, and plaintiff

has been retaliated against for complaining about disability discrimination and for taking FMLA

leave.

25.  After plaintiff became ill and complained about harassment and exercised his

rights, supervisor Petriello required that plaintiff check in every 30 minutes with the secretary for

months, which was humiliating because it made it appear that plaintiff could not be trusted.

Petriello repeatedly called plaintiff "dopey" or asked plaintiff's co-workers "Where's dopey,"

and What's dopey doing?"  Petriello no longer gave plaintiff access to the keys needed for

plaintiff to perform his responsibilities.  Plaintiff wore a camouflage shirt one day, and Petriello

claimed that plaintiff violated the dress code, although plaintiff had worn the shirt numerous

times in the past and Petriello said nothing until plaintiff got sick.  When plaintiff returned from

FMLA leave, Petriello met plaintiff with hostility.  Petriello told plaintiff that there would be "no

free for all" and that plaintiff could not take his work keys home with him anymore, as he had

done for years.  Petriello also told plaintiff he has to check in with him after he completes every

assignment.  Petriello also has other employees check up on plaintiff's work and whereabouts.

Petriello micromanaged plaintiff and belittled him in front of others.  Further, Petriello excluded

plaintiff from a pizza lunch with his co-workers and told plaintiff's co-workers to stay away

from plaintiff because he is a "troublemaker."  Petriello falsely accused plaintiff of hiding in the

supply closet and watching videos or movies on his cellphone.  Petriello criticizes plaintiff when

he sits down to tie his shoes, but Petriello sits and leans back on his reclining chair all the time,

while plaintiff is always on his feet.  Petriello, with the other defendants' approval, is trying to

isolate and ostracize plaintiff and make him so miserable that he resigns.  Defendants also

collectively issued plaintiff a performance evaluation in 2022 making false statements about

plaintiff's work performance, including, among other things, that he hides in the supply closet

and watches videos.

26.  Plaintiff's co-workers have told plaintiff that Petriello does not treat anyone

else the way he treats plaintiff.  Nothing justifies the treatment that plaintiff has received and it

raises an inference of discrimination and retaliation.

27.  Human Resources Manager Maria Ugarte, with CEO Jonathan Weinbach's

approval and/or knowledge, failed to take appropriate action concerning plaintiff's complaints of

disability discrimination, the way in which plaintiff is being treated, and even disciplined

plaintiff and denied him a bonus.  Defendants also gave supervisor Petriello a salary increase.

28.  NYPC's Employee Handbook, p. 51, states,

As a condition of employment, all employees are required to keep
confidential all information acquired during the term of their
employment and not to release, use, or disclose same, other than in
the performance of the employees official job function, without the
prior written permission of The Managing Director of the
Company or an Officer of the Company.  No employee, under any
circumstances, is allowed to divulge, copy or transmit confidential
patient-related, or proprietary Company information ('Confidential
Information') to any other employee, person, group, corporation,
or association, without such prior written permission. … The
unauthorized disclosure of confidential information will result in
immediate disciplinary action, up to and including termination.

29.  Despite the above policy, because he was and is instrumental in the plan to

harass plaintiff to the point that he will resign because of his disability and the workplace

response to his disability, supervisor Petriello was not disciplined for telling his spouse that

plaintiff has cancer and was having cancer surgery.

30.  NYPC Employee Handbook, p. 60, states,

(1) Employees are expected at all times to conduct themselves in a
positive manner in order to promote the best interests of the
Company. The behavior of employees should be professional and
business like.  Appropriate employee conduct includes:

(a) Treating all customers, visitors, and coworkers in a courteous
manner;

(b) Refraining from behavior or conduct that is offensive or
undesirable, or which is   contrary to the Company's best interests
…

31.  NYPC's top officials have also stated in an employee manual that: "We as a

team must communicate honestly, act with integrity and ethics, continually strive for

improvement, and treat each other with kindness and respect to achieve our mission of setting the standard for patient care in proton therapy."

32.   Despite the above policies, because he was and is instrumental in the plan to harass plaintiff to the point that he will resign because of his disability and the workplace response to his disability, supervisor Petriello was not disciplined for calling plaintiff "dopey" or asking people "Where's dopey," and What's dopey doing?"  Moreover, although the NYPC has written anti-discrimination and retaliation policies, no remedial measures were taken to correct Petriello's conduct or the conduct of the other defendants.

33.   Defendants' policies are not applied consistently and evenly.  The progressive discipline policy in the employee handbook, p. 76, indicates that plaintiff should have only received a verbal warning for leaving 15 minutes early, assuming he did something wrong, which he did not.  Plaintiff was and is treated more harshly than warranted because of his disability, his complaints to his supervisor and human resources that the harassment cease, his FMLA leave, and his EEOC charge.

34.   As a result of the defendants' actions, plaintiff suffered emotional distress, fear, embarrassment, humiliation, fear, physical manifestations of emotional distress, an invasion of privacy, damage to his personal and professional reputation, and financial loss.

## FIRST CLAIM

### (Disability Discrimination under the ADA)

### (Against Defendant NYPC)

35.   Plaintiff repeats the foregoing allegations.

36.   Defendant NYPC discriminated against plaintiff with respect to the terms and conditions of his employment on the basis of his disability, record of impairment, and what

defendant regarded as a disability, in violation of the ADA.  Because the individuals who perpetrated the discrimination were managers and supervisors, their conduct is imputed to the NYPC.

37.  Defendant's conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

38.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## SECOND CLAIM

**(Retaliation for Complaining about Disability Discrimination under the ADA)**

**(Against Defendant NYPC)**

39.  Plaintiff repeats the foregoing allegations.

40.  Defendant NYPC retaliated against plaintiff with respect to the terms and conditions of his employment on the basis of his complaints about disability discrimination, in violation of the ADA.  Because the individuals who perpetrated the discrimination were managers and supervisors, their conduct is imputed to the NYPC.

41.  Defendant's conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

42.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## THIRD CLAIM

**(Disability Discrimination under the Rehabilitation Act)**

**(Against Defendant NYPC)**

43.  Plaintiff repeats the foregoing allegations.

44.  Defendant NYPC discriminated against plaintiff with respect to the terms and conditions of his employment on the basis of his disability, record of impairment, and what defendant regarded as a disability, in violation of the Rehabilitation Act, if the defendant is the recipient of federal funds.  Because the individuals who perpetrated the discrimination were managers and supervisors, their conduct is imputed to the NYPC.

45.  Defendant's conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

46.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## FOURTH CLAIM

### (Retaliation for Complaining about Disability Discrimination under the Rehabilitation Act)

### (Against Defendant NYPC)

47.  Plaintiff repeats the foregoing allegations.

48.  Defendant NYPC retaliated against plaintiff with respect to the terms and conditions of his employment on the basis of his complaints about disability discrimination, in violation of the Rehabilitation Act, if the defendant is the recipient of federal funds.  Because the individuals who perpetrated the discrimination were managers and supervisors, their conduct is imputed to the NYPC.

49.  Defendant's conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

50.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## FIFTH CLAIM

**(Disability Discrimination under the NYSHRL)**

**(Against all Defendants)**

51.  Plaintiff repeats the foregoing allegations.

52.  Defendants discriminated against plaintiff with respect to the terms and conditions of his employment on the basis of his disability, record of impairment, and what defendants regarded as a disability, in violation of the NYSHRL.  Because the individuals who perpetrated the discrimination were managers and supervisors, their conduct is imputed to the NYPC.

53.  The individual defendants, John Petriello, Maria Ugarte and Jonathan Weinbach, are individually liable for their own misconduct and/or for aiding and abetting discrimination.

54.  Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

55.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## SIXTH CLAIM

**(Retaliation for Complaining about Disability Discrimination under the NYSHRL)**

**(Against all Defendants)**

56.  Plaintiff repeats the foregoing allegations.

57.  Defendants retaliated against plaintiff with respect to the terms and conditions of his employment on the basis of his complaints about disability discrimination, in

violation of the NYSHRL.  Because the individuals who perpetrated the discrimination were managers and supervisors, their conduct is imputed to the NYPC

58.  The individual defendants, John Petriello, Maria Ugarte and Jonathan Weinbach, are individually liable for their own misconduct and/or for aiding and abetting retaliation.

59.  Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

60.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## SEVENTH CLAIM

### (Disability Discrimination under the NYCHRL)

### (Against all Defendants)

61.  Plaintiff repeats the foregoing allegations.

62.  Defendants discriminated against plaintiff with respect to the terms and conditions of his employment on the basis of his disability, record of impairment, and what defendants regarded as a disability, in violation of the NYCHRL.  Because the individuals who perpetrated the discrimination were managers and supervisors, their conduct is imputed to the NYPC.

63.  The individual defendants, John Petriello, Maria Ugarte and Jonathan Weinbach, are individually liable for their own misconduct and/or for aiding and abetting discrimination.

64.  Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

13

65.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## EIGHTH CLAIM

**(Retaliation for Complaining about Disability Discrimination under the NYCHRL)**

**(Against all Defendants)**

66.  Plaintiff repeats the foregoing allegations.

67.  Defendants retaliated against plaintiff with respect to the terms and conditions of his employment on the basis of his complaints about disability discrimination, in violation of the NYCHRL.  Because the individuals who perpetrated the discrimination were managers and supervisors, their conduct is imputed to the NYPC.

68.  The individual defendants, John Petriello, Maria Ugarte and Jonathan Weinbach, are individually liable for their own misconduct and/or for aiding and abetting retaliation.

69.  Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

70.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## NINTH CLAIM

**(Retaliation for Exercising Rights Under the FMLA)**

**(Against all Defendants)**

71.  Plaintiff repeats the foregoing allegations.

14

72. An employer is prohibited from interfering with, restraining, or denying the exercise of, or the attempt to exercise, any FMLA right. An employer is prohibited from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise any FMLA right. An employer is prohibited from discharging or in any other way discriminating against any person, whether or not an employee, for opposing or complaining about any unlawful practice under the FMLA.

73. Defendants retaliated against plaintiff with respect to the terms and conditions of his employment on the basis of his FMLA leave. Because the individuals who perpetrated the discrimination were managers and supervisors, their conduct is imputed to the NYPC.

74. The individual defendants, John Petriello, Maria Ugarte and Jonathan Weinbach, are individually liable for their own misconduct in retaliating against plaintiff for taking FMLA leave.

75. Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

76. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## **TENTH CLAIM**

### **(Breach of Medical Confidentiality and Privacy under New York Law)**

### **(Against all Defendants)**

77. Plaintiff repeats the foregoing allegations.

78. Defendants are liable for breaching plaintiff's right to medical privacy and confidentiality through John Petriello's act of informing his spouse that plaintiff has cancer and

is having cancer surgery.  Because Petriello was acting within the scope of his employment when he engaged in the aforesaid misconduct, and the other individual defendants did not take corrective action while also acting within the scope of their employment, the NYPC is vicariously liable.

79.  Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

80.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## ELEVENTH CLAIM

### (Intentional Infliction of Emotional Distress under New York Law)

### (Against all Defendants)

81.  Plaintiff repeats the foregoing allegations.

82.  Defendants' misconduct toward plaintiff, as detailed herein, in whole or in part, constituted intentional infliction of emotional distress under New York law.  Because the individual defendants were acting within the scope of their employment when they engaged in the aforesaid misconduct, the NYPC is vicariously liable.

83.  Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

84.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## TWELFTH CLAIM

### (Defamation *Per Se* under New York Law)

### (Against all Defendants)

16

85.  Plaintiff repeats the foregoing allegations.

86.  Defendants' misconduct toward plaintiff, as detailed herein, in whole or in part, constituted defamation *per se* under New York law.  Because the individual defendants were acting within the scope of their employment when they engaged in the aforesaid misconduct, the NYPC is vicariously liable.  Defendants' false statements regarding plaintiff's performance, many of which plaintiff is still learning, such as John Petriello telling individuals at work that plaintiff hides in the closet and watches videos or movies on his cellphone, maligned plaintiff in his trade and profession and constitutes defamation *per se*.

87.  Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

88.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

WHEREFORE, plaintiff requests the following relief jointly and severally against the defendants:

a.    Compensatory damages in an amount to be determined by a jury;

b.    Punitive damages in an amount to be determined by a jury;

c.    Attorney's fees and costs;

d.    Prejudgment and other lawful interest;

e.    Such other and further relief as the Court may deem just and proper.

DATED:  October 2, 2022

/s   *Richard Cardinale*

_____

RICHARD CARDINALE
Attorney at Law
26 Court Street, Suite # 1507
Brooklyn, New York 11242
(718) 624-9391(w)
(917) 685-2853 (c)
richcardinale@gmail.com
website: richardcardinalelaw.com

18